OREGON IRON COMPANY, Appellant, *v.* J. C. TRULLINGER,
Respondent.

*Appeal from Clackamas County.*

1. A & B conveyed to C a water power, &c., thus: " With all the water
privilege which can be obtained (by ' C ') by building a dam below the
saw-mill of B, and to flow back the water to the foot of the present over-
shot wheel of B's mill, *and to use all the water which naturally flows below
said mill in said stream, unobstructed by A & B,* &c."—*Held*, to mean the
water as it flows in the stream below from the saw-mill, when the same
was in operation.

In 1864, respondent and one A. A. Durham were the own-
ers of Sucker creek and Sucker lake, of which it is the outlet.
Sucker lake is about two miles long and one-fourth of a mile
wide. Sucker creek, flowing from the lake, empties into the
Willamette river at Oswego, in Clackamas county, and is a
small stream in summer; and the distance from Sucker lake
to the Willamette river is but a few hundred yards.

At the time of making the contract, the proper construc-
tion of which is in controversy in this case, there was a dam
across Sucker creek at the point where it issues from the
lake; by means of which dam, the waters of the lake were
raised some eight or nine feet. When the winter rains pre-
vailed the dam was filled; and the water propelled a saw-
mill, then belonging to said Trullinger and Durham. The
water so saved in the wet season was sufficient to run the
said saw-mill during the dry season, and was a valuable
water power, and was so considered by Trullinger & Durham.
Being so possessed of said water power and mill, and being
the riparian owners of said lake and creek, they entered into a
written contract, or conveyance by which Trullinger and
wife, and Durham and wife conveyed to one H. D. Green a
piece of land near the mouth of said creek, and below their
said saw-mill and dam, " together with all the water privilege

on Sucker creek, the outlet of Sucker lake, which can be obtained by building a dam above the land described (sold as above stated), and below the said Durham's saw-mill, at a point to be selected by the said Green, his heirs and assigns; he having the right, which is hereby granted, to construct and maintain a dam of any length and heigth, and to flow back the water to the foot of the present overshot wheel of said saw-mill; and the right at all times to use all the water which naturally flows below said saw-mill in said stream, unobstructed by the parties of the first part, their heirs and assigns."

Afterwards Green conveyed his interest to the plaintiffs, who have constructed a dam, and built and put in operation a blast furnace for the reduction of iron ore; and use the waters of said creek for the purpose of operating their machinery; and it appears that it was for the purpose of erecting these works, that the land and water power were purchased of defendant and Durham.

The further statement of the case is found in the opinion.

*Wm. Strong, Esq.*, and *Logan & Shattuck*, for appellants. No authorities cited.

*Mitchell, Dolph & Smith*, for respondent:

The owner of the land upon a stream not navigable has a reasonable use of the water, and may build a dam, and obtain the momentum of its fall upon his own land.  (3 *Kent Com.*, 439 ; 2 *Hil. Real Est.*, 101, 102 *and* 103; 2 *Washb. Real Est.*, *section* 40.)

Where the owner of an entire estate sells a portion, the purchaser takes the portion sold with all the benefits, and *subject to all the burdens*, which appear at the time of sale to belong to it, as between it and the part retained by the vendor.   21 *N. Y.*, 505, and cases there cited.

In construing the deed the court will resort to extrinsic circumstances, &c.  (1 *Barb.*, 639 ; 3 *Barb.*, 79; 13 *N. Y.*, 569; 6 *How. Pr. R.*, 317.)

Oregon Iron Company *v.* Trullinger.

The court will look at the whole instrument and there gather the true meaning. (2 *Cowen*, 781.)

General words are restrained by the particular occasion. (18 *Johns.*, 420; 5 *Cowen*, 468.)

The literal import of words, when inconsistent with the evident intention of parties, will be disregarded. (*Kelly* v. *Upton*, 3 *Duer*, 291, 309.)

BOISE, J.   Appellant contends that by the terms of this conveyance, it has a right at all times to enjoy the natural flow of the water in said creek, unobstructed by the defendant's dam; that is to say, that the words, "which naturally flows below said saw-mill in said stream, unobstructed by said parties of the first part," &c., mean as the same was in a state of nature. If this view should be entertained as correct, then the defendant and Durham sold to Green all their control over the water in said lake and creek, and in effect abandoned their saw-mill and dam, and water power appertaining thereto.   If this were the understanding, why the words in the conveyance, limiting Green to the right to build his dam at a point below said saw-mill, and also limiting him to flow water by his dam, only to the foot of his overshot wheel of his saw-mill?   These reservations and limitations are inconsistent with the theory, that it was the intention of the parties to the conveyance to convey away to Green the control of the water at and above said saw-mill.   We think the court below gave the right construction to the conveyance, and that the words, "which naturally flows below said mill in said stream," mean the water which flowed from said mill when the same was in operation.   Any other construction would necessarily defeat the objects of the conveyance; for the evidence shows that without the aid of the defendant's dam to husband the waters of the wet season, the water power of plaintiff would be comparatively useless, not being sufficient to run the machinery during the summer.

Judgment is affirmed.